IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gina S., | ) | Case No.: 1:20-cv-03595-JD-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Kilolo Kijakazi[1], Acting Commissioner of | ) | |
| Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges ("Report and Recommendation" or "Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff Gina S.[2] ("Plaintiff" or "Gina") brings this action pursuant to 42 U.S.C. §§ 405(g), as amended, seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying him Disability Insurance Benefits ("DIB"). The Magistrate Judge issued a Report and Recommendation on September 10, 2021, recommending the Commissioner's decision be affirmed. (DE 25.) On October 4, 2021, Plaintiff filed Objections to the Report and Recommendation, contending the Report improperly recommends dismissal of additional evidence added to the DIB claim. (DE 29.) Defendant filed a Reply. (DE 30.)

Having carefully considered the Plaintiff's objections and the applicable law, the Court adopts the Report and Recommendation and affirms the Commissioner.

---

[1]     Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021; and therefore, he is substituted for Andrew Saul as the defendant in this suit.

[2]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. Plaintiff Gina S. was substituted for her deceased claimant husband, Matthew F. ("Claimant"), who died on December 5, 2020.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation. (DE 25.) However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary. Claimant was 48 years old at the time of the hearing. Claimant completed the general educational development ("GED") tests, earning a high school equivalency certificate, and his past relevant work ("PRW") was as a carpenter, a solar energy system installer, and a labor crew supervisor. Claimant had been unable to work since May 2, 2016, when he fell 35 feet from a roof while working to install solar panels on a roof. Claimant was hospitalized for nearly a month and treated for a broken leg, pelvis, and lumbar spine, and Claimant required extensive surgery to pin bones together with rods, plates, and screws.

He was discharged with home health services and instructed to follow up with orthopedic surgery in two weeks for fractures to his right upper and lower extremities, neurosurgery in one year for aneurysms, and a pulmonologist in six to 12 months for the pulmonary nodule. (DE 15-8, pp. 250-51.) He was partially weightbearing with his right upper extremity and touchdown weightbearing with his right lower extremity with assistance or device. (DE 15-8, p. 251.) On November 10, 2016, Claimant reported difficulty attending outpatient physical therapy but reported that he had been able to use his arm fairly well despite its aching. (DE 15-8, p. 34.)

Claimant continued to follow up with complaints of pain and had a testicle removed on August 15, 2017. (DE 15-9, p. 208.) By September 8, 2017, Claimant indicated his voiding issues had resolved, his pain was minimal, and he was taking less than one Lortab per day. (DE 15-8, p. 9.) By November 14, 2017, Claimant reported chronic back pain and requested Oxycodone 10 mg be refilled. (DE 15-8, p. 13.) The doctor noted the following on exam: no clubbing, cyanosis, or

edema of the extremities; 5/5 bilateral upper and lower extremity strength; intact sensation throughout; normal gait; symmetric bilateral deep tendon reflexes; paraspinal muscle spasm in the lumbar region; TTP over the bilateral lower lumbar region; decreased bending/anterior flexion of the lower back secondary to pain; and negative straight-leg raising bilaterally. He assessed benign essential hypertension and low back pain, refilled Zestoretic 12.5-10 mg for hypertension, and indicated he would refer Claimant to a pain management specialist. (Id.)

Claimant presented to Sanjay Kumar, M.D. ("Dr. Kumar"), for a vocational rehabilitation exam on October 9, 2018. (DE 15-9, pp. 427-29.) Dr. Kumar concluded:

> Patient will have difficulty lifting[,] carrying[,] pushing[,] and pulling. He is capable of sitting. He will have difficulty standing or walking for any long distance. Patient is capable of climbing. He will have difficulty stooping[,] bending[,] balancing[,] crawling[,] kneeling[, and] crouching. Patient has normal fine motor skills. He has normal overhead and forward reaching. He has no vision and hearing [or] speech impairment. He is capable of tolerating environmental exposures.

(DE 15-9, p. 429.) On October 16, 2018, state agency medical consultant Christine Thompson, M.D. ("Dr. Thompson"), reviewed the record and assessed Claimant's physical residual functional capacity ("RFC") as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of four hours; sit for a total of about six hours in an eight-hour workday; occasionally climb ladders, ropes, and -scaffolds; and frequently kneel, crawl, and climb ramps an-d stairs. (DE 15-, pp. 7-9.)

On February 3, 2019, state agency medical consultant Clarice Bell-Strayhorn, M.D. ("Dr. Bell-Strayhorn"), reviewed the record and assessed the following physical RFC: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for a total of four hours; sit for a total of about six hours in an eight-hour workday; frequently balance, stoop, kneel, crouch, and climb ramps and stairs; occasionally crawl and climb ladders, ropes, or scaffolds; and avoid concentrated exposure to extreme cold, vibration, and hazards. (DE 15-3, pp. 19-21.)

At the administrative hearing on September 26, 2019, the Vocational Expert (VE) testified that a hypothetical individual of Claimant's vocational profile who could perform sedentary work with occasional postural functions; no climbing of ladders, ropes, or scaffolds; should avoid exposure to excessive vibration; and should avoid hazards and unprotected heights. (DE 15-2, p. 79.)  The VE testified the hypothetical individual would be unable to perform Claimant's past relevant work. (Id.)  The VE identified other jobs the hypothetical person could perform as sedentary jobs with an SVP of 2 as an order clerk, DOT No. 209.567-014, a charge account clerk, DOT No. 205.367-014, and a document preparer, DOT No. 249.587-018, with approximately 18,000, 15,000, and 91,000 positions available nationally, respectively. (Id.)  On October 30, 2019, the Administrative Law Judge (ALJ) found, among other things, that:

> 11. The claimant was under a disability, as defined by the Social Security Act, from May 2, 2016 through November 13, 2017 (20 CFR 404.1520(g)).

> 12. The claimant has not developed any new impairment or impairments since November 14, 2017, the date the claimant's disability ended. Thus, the claimant's current severe impairment is the same as that presented from May 2, 2016 through November 13, 2017.

> 16. After careful consideration of the entire record, the undersigned finds that, beginning November 14, 2017, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasional postural activity but no climbing of ladders, ropes, and scaffolds; and he must avoid excessive vibration, hazards, and unprotected heights.

(DE 15-2, pp. 36-46.)

Subsequently, Claimant presented additional evidence to the Appeals Council to include records from the following:  (1) plastic surgeon Peter C. de Vito, M.D. ("Dr. de Vito") who recommended that scar reconstruction be deferred until after Claimant's providers determined whether the scars would be utilized to revisit the retained metal stabilization devices and assessed a 40% impairment rating to Claimants skin; (2) spinal surgeon Steven C. Poletti, M.D. ("Dr.

Poletti") who assessed a 5% impairment rating to Claimant's right upper extremity due to mild sensory deficit and minor loss of shoulder motion, 25% whole-person impairment rating for pelvic injuries, an additional 8% whole person impairment rating due to transverse process fractures to the lumbar spine, and an additional 10% whole-person impairment rating based on inguinal nerve injury requiring testicular removal; (3) vocational consultant Jean R. Hutchinson, M.Ed., CRC, CVE ("Ms. Hutchinson"), who provided an employability-evaluation report, and opined Claimant was unable to perform the required tasks of his PRW and did not have transferable skills to other work within his RFC; and (4) orthopedic surgeon Bright McConnell, III, M.D. ("Dr. McConnell") who considered Claimant to be at maximum medical improvement and assessed a 15% impairment rating to Claimant's right upper extremity and a 25% impairment rating to his right shoulder.  The Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (DE 15-2, pp. 2-8.)  Thereafter, Claimant brought this action seeking judicial review of the Commissioner's decision in a complaint filed on October 13, 2020.  (DE 1.)

## LEGAL STANDARD

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court.  See Mathews v. Weber, 423 U.S. 261 (1976).  The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge.  See 28 U.S.C. § 636(b)(l).  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings.  See Orpiano v. Johnson, 687 F.2d 44, 47 (4th

Cir. 1982). In the absence of a specific objection, the court reviews the report and recommendation only for clear error. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[3] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. See Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. See Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting

---

[3]     "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only— "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

## **DISCUSSION**

Plaintiff objects to the Report and Recommendation on the basis that the Magistrate Judge improperly dismissed the additional evidence added to Claimant's claim before the Appeals Council and failed to consider Claimant's subjective allegations. (DE 29.) The Court finds that these arguments are essentially a restatement of arguments raised in previous filings. As to the Appeals Council finding that Plaintiff's late-submitted evidence was not material, the Report specifically concluded that substantial evidence supports the Appeal's Council's finding that the additional evidence was not material. (DE 25, pp. 31, 33.) The Report considered Dr. de Vito's consultation note, which provided no reasonable likelihood of changing the ALJ's decision, "as he noted no observations or functional limitations that run contrary to the ALJ's findings." (DE 25, pp. 33.) The Report also noted Ms. Hutchinson's employability evaluation report, was based on allegations that the ALJ had declined to accept a more-restrictive RFC than that actually assessed. (DE 25, p. 33.) There is no indication that Ms. Hutchinson's opinion, submitted for workers' compensation purposes (not SSA disability standards), would have been found to be persuasive had it been presented to the ALJ. (See DE 22, pp. 13-14.) Although Plaintiff asserts the Magistrate Judge's reasoning here is "backwards" (DE 29, p. 3), the Court finds that substantial evidence supports the Appeals Council determination that this additional evidence was not material.

Dr. McConnell's observations were also unlikely to change the ALJ's decision because they were generally consistent with the other evidence of record to which the ALJ cited. (DE 25, p. 3.) Lastly, the Magistrate Judge correctly recognized that although Dr. Poletti observed some abnormalities on examination, his observations were also generally consistent with those that the ALJ cited. (DE 25, p. 33.) Further, Dr. Poletti's opinions were not reasonably likely to change

the outcome of the decision, as he relied on similar observations and imaging reports to reach differing conclusions than those of other doctors, and Dr. Poletti's physical examination was not as thorough.  (DE 25, p. 34.)

Lastly, the Report also appropriately discussed the ALJ's failure to credit Plaintiff's subjective allegations, which was not based solely on the medical evidence, but rather "a combination of [Claimant's] testimony, his providers' observations, imaging results, opinion evidence, and the fact that he was not taking prescribed medication." (DE 25, p. 37.)  For instance, the ALJ cited November 14, 2017 treatment, medical imagining, the fact that Plaintiff was taking no prescription medication, and Plaintiff's own testimony as to increased functioning.  (DE 25, pp. 37-38.)  Further, the Court finds that the ALJ did not "penalize" Plaintiff for failing to obtain treatment he could not afford; on the other hand, as the Magistrate Judge pointed out, a "de-escalation in medical treatment is not the same as a failure to seek treatment." (DE 25, pp. 38-39).  There is no indication within the ALJ's decision that he discounted Plaintiff's allegations based on a failure to obtain medical treatment.  (DE 25, p. 39.)

Given the record as a whole, Plaintiff's mere disagreement as to the DIB decision is not enough to overturn the ALJ's decision.  Therefore, the Report properly considered the evidence in the record and Claimants subjective complaints, Plaintiff's objections are overruled, and the Court affirms the Commissioner's decision.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation and affirms the Commissioner.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

February 1, 2022
Greenville, South Carolina